215 So.2d 921 (1968)
Huey HUSSER et al.
v.
BOGALUSA COCA COLA BOTTLING COMPANY, Inc., et al.
Karl L. BICKHAM et al.
v.
BOGALUSA COCA COLA BOTTLING COMPANY, Inc., et al.
Nos. 7458, 7458A.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Rehearing Denied December 16, 1968.
*922 John W. Anthony, of Talley, Anthony, Hughes & Knight, Bogalusa, for appellants (7458 & 7458A).
John N. Gallaspy, Bogalusa, and W. K. Christovich, of Christovich & Kearney, New Orleans (7458); France W. Watts, III, of Watts & Watts, Franklinton, for appellees-appellants.
Before LANDRY, REID and SARTAIN, JJ.
LANDRY, Judge.
No. 7458
These companion cases, consolidated for trial and appeal, arise out of a single automobile accident which occurred when a 1963 Chevrolet automobile owned by plaintiff Huey Husser, and being driven by his wife, Elaine M. Husser, also plaintiff herein, was struck from the rear by an overtaking pickup truck owned by defendant Bogalusa Coca Cola Bottling Company, Inc. (Coca Cola) and being driven at the time by its employee, Robert E. Carter. At the time of the accident, Mrs. Husser was attempting a left turn.
Plaintiffs in case No. 7458, Mr. and Mrs. Husser, seek recovery of damages against Carter, Coca Cola and the latter's insurer, The Employers' Liability Assurance Corp., Ltd. (Employers'). Carter filed reconventional and third party demands against the Hussers and their insurer, The Fidelity and Casualty Company of New York (Fidelity).
In the associated action Mrs. Lois Marie Bickham, a guest passenger in the Husser vehicle, and her husband, Karl L. Bickham, pray for recovery against Mr. and Mrs. Husser, Fidelity, Carter and Coca Cola.
After trial on the merits, the lower court rendered judgment declaring Carter alone to have been at fault. Accordingly, judgment was rendered in favor of Mrs. Bickham in the sum of $5,000.00 for personal injuries and in favor of Mr. Bickham in the sum of $416.82, against defendants Carter and Coca Cola in solido. The Bickhams' claims against the Hussers and Fidelity were rejected. The trial court also rendered judgment in favor of Mrs. Husser in the sum of $750.00 and in favor of Mr. Husser in the amount of $129.85, against Carter, Coca Cola and Employers in solido. Carter's reconventional and third party demands were dismissed.
Carter, Coca Cola and Employers have appealed the judgments rendered against them. Mr. and Mrs. Husser have answered the appeal praying for an increase in the awards for both Mrs. Husser's personal injuries and medical expense. Mr. and Mrs. Bickham have appealed rejection of their demands against the Hussers and Fidelity.
We affirm the decision of the lower court declaring Carter guilty of negligence and reverse the determination that Mrs. Husser was free of negligence proximately causing the accident.
As plaintiffs, the Bickhams allege Mrs. Husser was negligent in attempting a left turn from the highway without giving adequate warning to oncoming and overtaking traffic. They also maintain Mrs. Husser failed to yield the right of way and attempted a left turn when the overtaking truck was so close as to make such a maneuver patently dangerous. These plaintiffs charge Carter with negligence in traveling at an excessive rate of speed, failing to maintain a proper lookout, traveling too close and failing to heed the left turn signal exhibited by the Husser vehicle.
In their petition the Hussers charge Carter with negligence in the same respects as asserted by the Bickhams. In answer to the reconventional demand of Carter, the Hussers deny any negligence on the part of Mrs. Husser and alternatively plead contributory negligence on the part of Carter.
Defendants Carter, Coca Cola and Employers deny Carter was negligent in any manner. They allege the accident resulted solely from the remission of Mrs. Husser in substantially the same respects averred by the Hussers. Alternatively defendants contend the avowed negligence of Mrs. *923 Husser is imputable to Mrs. Bickham because said parties were engaged in a joint venture.
The issues thus posed are primarily factual in nature. Plaintiffs' version of the mishap is substantially that Mrs. Husser, accompanied by Mrs. Bickham, Mrs. Ouida Minarik, Mrs. Leeke Magee and Mrs. Bobby McDaniel, were enroute home after attending a nursing school in Bogalusa. Mrs. Husser was proceeding westerly along Highway 10, the paved surface of which is 18 feet in width. As Mrs. Husser approached the driveway to the Magee home situated on the left or south side of the roadway, she reduced the speed of her vehicle, placed her left turn signal in operation and prepared to turn. While the Husser vehicle was still in its proper lane, it was struck from the rear by the pickup truck driven by Carter.
On the other hand, defendants maintain Mrs. Husser attempted a left turn without giving proper signal of such intention. They further allege Mrs. Husser failed to observe the overtaking truck, failed to yield the right of way and attempted the turn when the overtaking truck was so close a collision was inevitable.
The record establishes the day of the accident, December 2, 1965, to have been a clear, dry day affording normal visibility. It is further revealed that the highway in question was in rather a poor state of repair. It also appears that the locus of the accident is an area of continuous curves and successive hills and valleys with the result that overtaking and oncoming vehicles may be obscured from a motorist's view both front and rear and yet be rather near in terms of separating distance. It is conceded the foregoing condition afforded few opportunities for an overtaking vehicle to pass in safety. The exact point of the collision in question is seemingly one of the few places permitting safe passing inasmuch as the road was straight and level for approximately two miles west of the Magee driveway and about 700 feet east thereof. While there is some testimony regarding a hill located east of the Magee residence, the preponderance of testimony is that from the driveway one had an unobstructed view of at least 600 to 700 feet easterly.
Mrs. Husser's testimony is to the effect she was unaware the Coca Cola truck was following her vehicle. She stated she intended to turn left into the Magee driveway to let Mrs. Magee out. She also testified that when she reached a point approximately 100 to 120 yards east of the entrance to the Magee premises, she looked into her rear view mirror and observed no overtaking traffic. She then placed her left turn indicator in operation and commenced slowing her speed and directing her attention to two oncoming motorcyclists approaching from the west. According to Mrs. Husser, she concluded she had time to turn in front of the approaching cyclists but before she actually began her turn, her vehicle was struck from the rear. Mrs. Husser was certain that at the moment of impact her vehicle was still completely in the right or westbound lane. She conceded, however, that at the instant of contact, she may have turned her front wheels to the left but that her left front wheel had not entered the opposing lane.
In substance Mrs. Husser's guest passengers verified the version of the accident related by their hostess.
The opposing view related by Mr. Carter is that he was proceeding westerly toward Franklinton in the scope of his employment by Coca Cola and at a rate of speed estimated at between 45 and 50 miles per hour. He acknowledged he had been following the Husser vehicle for quite some time awaiting a favorable opportunity to pass. Carter testified that after topping the hill east of the Magee residence, he concluded he could safely pass. With that intention, he pulled into the left lane while still approximately 100 feet to the rear of the Husser car. He also stated that when he reached a point about 60 to 70 feet from the rear of the Husser automobile, Mrs. Husser suddenly and without visible signal commenced to turn left. He also stated he did not recall *924 whether or not he sounded his horn to alert Mrs. Husser to his presence. Carter additionally stated that the Husser car had not only commenced its turn but was entirely blocking the eastbound lane as he was attempting to pass. He also stated he did all within his power to avert the collision. He explained by stating that he attempted to swerve to the rear of Mrs. Husser's car but was unsuccessful in his attempt.
It is uncontroverted that the left rear fender of the pickup truck struck the right rear of the Husser automobile. It is also uncontested that following the impact the Husser automobile was turned almost completely around and came to rest with its right rear wheels near the edge of the Magee driveway and its front facing in a northeasterly direction. The Coca Cola truck came to rest on the shoulder on the right or north side of the highway with its rear wheels just opposite the entrance to the Magee residence.
Trooper Ray Pope of the Louisiana State Police testified he investigated the accident and found skid marks left by the pickup truck commencing approximately 72 feet east of the point of impact. He testified unequivocally these skid marks originated in the right or westbound lane, then divided as the truck veered into the left or eastbound lane and commenced sliding sideways down the highway. According to Trooper Pope, as the truck was skidding toward the point of impact, its tire marks straddled the center lines of the roadway. He explained by stating that the marks indicated the rear wheels of the truck were in the left or eastbound lane while its front wheels were in the right or westbound lane. The officer found no debris indicative of the point of impact. He concluded from the skid marks observed that the point of impact occurred in the left or eastbound lane and that the Husser car was almost clear of the roadway after making its left turn when contact was established between the vehicles.
The mute physicial evidence consisting of the nature of the damages to the vehicles and the skid marks which placed the left rear of the truck in the left lane at the moment of impact contradict the versions of the accident offered by the respective drivers. Mrs. Husser could not possibly have been in the right lane when her vehicle was struck on its right rear by the left fender of the truck inasmuch as the left rear wheels of the truck were in the left or eastbound lane at the instant of contact. Neither could Carter have been in the left or passing lane when he first observed Mrs. Husser commence her turn. This is necessarily so because the skid marks left by the truck commenced in the right or westbound lane. For the left fender of the truck to have struck the right rear of the Husser car while the latter vehicle was still facing westerly in the westbound lane, the front of the truck would have had to be on the north shoulder of the highway. Only such a position would have placed the left rear of the truck within the right or westbound lane. There is no evidence whatsoever that the front wheels of the truck were on the north shoulder of the roadway ot the moment of impact. Moreover, the physical evidence does not support the conclusion the impact took place in the westbound lane.
We conclude the impact occurred in the left or eastbound lane as Mrs. Husser's vehicle was almost completing its turn. Only in this position could the right rear of the Husser car be struck by the left rear fender of the truck sliding down the highway with its rear wheels in the left or eastbound lane and its front wheels in the right or westbound lane. In concluding that Mrs. Husser's vehicle was facing westerly in the right lane when struck, our brother below erred.
It is settled law that left turns being extremely hazardous, it is incumbent upon a motorist attempting such a maneuver to make certain it can be accomplished in safety. In turning left a motorist must not only signal his intention to do so and thus alert oncoming or overtaking traffic, but must also yield the right of way to both *925 oncoming and overtaking vehicles lawfully using the highway.
The applicable rule is thusly stated in Ruple v. Travelers Indemnity Company, La. App., 129 So.2d 240:
"It is the well-settled law and jurisprudence of our state that a person who attempts to make a left turn or who attempts to turn from a direct line on the public highways of the state must ascertain before turning that the turn can be made safely without endangering normal overtaking or on-coming traffic. Blanchard v. Ashby Construction Co., La.App. 1st Cir., 1957, 95 So.2d 670; Methvin v. Roshto, La.App. 1st Cir. 1957, 96 So.2d 383. The onerous burden placed upon a left turning motorist is not discharged by the mere signaling of an intention to turn. The giving of a signal, which fact is disputed in the instant case, is immaterial if at the time the driver of the turning vehicle did not have the opportunity to make the turn in safety.

* * * * * *
Pertinent under these circumstances is the observation made by the court in Service Fire Insurance Company (of New York) v. Suezy, La.App. 1st Cir., 1954, 77 So.2d 110:
"By his own admission the defendant did not exercise such caution, as, although he knew that the Hartner car was following him, he did not look immediately prior to turning to determine that the way was clear. Regardless of whether or not he had given a hand signal, he knew that there was traffic behind him and yet failed to exercise the caution that the law imposes upon him. By just giving the hand signal Suezy only performed one half of his duty. He should also have looked to see if the way was clear. If he had looked, he would have seen he could not make the turn safely. This is similar to a motorist who comes to an intersection and stops but fails to look for approaching traffic. He only performs one-half of his duty under the law. This was definitely an act of gross negligence on the part of the defendant and was a proximate cause of the accident, if not the proximate cause of the accident.'"
Inasmuch as Mrs. Husser conceded her unawareness of the presence of the overtaking truck and did not consult her rear view mirror immediately before commencing her turn, she must be adjudged guilty of negligence proximately causing the accident. Had she looked before commencing her turn, she would or should have noted the pickup truck and not commenced her turn. Granting she had her turn indicator operating, nevertheless she performed only part of the duty required by law. She should not have turned without first making sure she could safely do so. LSA-R.S. 32:104; Hoover v. State Farm Mutual Automobile Ins. Co., La.App., 185 So.2d 548; Clark v. Spillman, La.App., 173 So.2d 203. Mrs. Husser's negligence necessitates reversal of the judgment rendered in favor of her and Mr. Husser.
Equally well established is the rule that the driver of a following or overtaking vehicle must be alert to the actions of motorists preceding him on the highway. The following motorist must maintain a safe distance considering attending circumstances; he must keep a proper lookout and have his vehicle under such control as to avoid colliding with a vehicle ahead so long as the preceding motorist is driving within his legal rights. Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165; Gorum v. Pritchard, La.App., 173 So.2d 308.
We find that Carter was not maintaining a proper lookout inasmuch as he obviously did not timely see Mrs. Husser's left turn signal. We further conclude that Carter, traveling in the right hand lane, did not see Mrs. Husser's left turn signal until he was so close that a collision was imminent. We also find that when Carter applied his brakes, his vehicle veered partly into the left or passing lane and in this *926 position slid down the highway to the point of impact in the left lane. In so operating his vehicle, Carter was guilty of negligence proximately causing the accident.
The contention that the negligence of Mrs. Husser is imputable to the Bickhams under the theory of joint venture is not sustained by the evidence. The record discloses that Mrs. Husser and her guest passengers each took turns using their respective vehicles in going from their homes to the hospital where they were all attending nursing classes at a hospital in Bogalusa. It is readily conceded they enjoyed a mutuality of interest in that they were engaged in a matter of joint or common concern. However, there is not one iota of evidence of record indicating that any of Mrs. Husser's guests had the slightest degree of control, express or implied, over Mrs. Husser as driver of the vehicle.
It is settled law that mere joint or common interest is not sufficient per se to constitute occupants of a conveyance joint adventures. In addition to a mutual or joint interest in the objects and purposes of the undertaking, there must also exist an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance or vehicle. Squyres v. Baldwin, 191 La. 249, 185 So. 14; Cornelius v. Fields, La.App., 122 So.2d 704.
Finally, we arrive at the question of the award to Mrs. Bickham for personal injuries. Mrs. Bickham testified that approximately one hour after the accident she experienced pain in her back and in the back of her head and neck. She was taken that day to Dr. Wm. R. McGehee, to whom she returned the following day. Because of pain, she remained in bed all that week end and went to school the following Monday. She was forced to leave school on Monday because of persistent discomfort which prompted her to see Dr. Hollis Stafford who administered a "shot" which afforded no relief. Later she consulted Dr. F. J. Foster, M.D., who hospitalized her for approximately one week. During this period Mrs. Bickham was placed in traction. Following her release, however, she continued to experience pain. She returned to school for a time during which interval she employed a heating pad to obtain relief at night. In February, 1966, the pain became so intense she again consulted Dr. Foster who placed her in traction. Following this latter confinement, she returned to school but has consistently been bothered with neck and back pain ever since. According to Mrs. Bickham, she was having pain at the time of trial and was still using a heating pad at night to relieve her discomfort.
Dr. Hollis Stafford, Jr., General Practitioner, testified he saw Mrs. Bickham on the date of the accident and administered first aid. He saw her again two days later. X-rays taken disclosed the patient had no fractures or other bone injury. Dr. Stafford diagnosed Mrs. Bickham's condition as acute cervical strain. His examination also revealed multiple contusions.
Dr. R. J. Foster, M.D., hospitalized Mrs. Bickham from December 6, 1965 to December 13, 1965, and again from February 21, 1966 to February 24, 1966. During the latter interval Mrs. Bickham was placed in traction. Dr. Foster found Mrs. Bickham to be suffering from severe whiplash injury to the cervico-dorsal spine accompanied by general bruises of the body.
In view of the nature of Mrs. Bickham's injury, her being hospitalized on two occasions and the persistence of the pain experienced as a result of her injuries, we are of the opinion the award of $5,000.00 is proper. Said amount appears compatible with the recoveries permitted in Dillon v. Pope, La.App., 110 So.2d 229 and Bowden v. Atlantic National Insurance Company of New York, La.App., 165 So.2d 15, wherein awards of $5,000.00, respectively, were granted for substantially similar injuries.
Accordingly, the judgment of the trial court in favor of plaintiffs Huey and Elaine M. Husser, against defendants *927 Robert Carter, Bogalusa Coca Cola Bottling Company, Inc. and the Employers' Liability Assurance Corp., Ltd., be and the same is reversed and set aside and judgment rendered herein dismissing and rejecting said plaintiffs' demands.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiffs Huey and Elaine M. Husser and against defendants Robert Carter, Bogalusa Coca Cola Bottling Company, Inc. and the Employers' Liability Assurance Corp., Ltd., dismissing and rejecting said defendants' reconventional and third party demands is affirmed; all costs in this matter to be paid jointly by plaintiffs and defendants.
Affirmed in part, reversed in part and rendered.
No. 7458A
For reasons this day set forth in the companion case of Huey Husser et al. v. Bogalusa Coca Cola Bottling Company, Inc., et al., Number 7458 on the docket of this court, it is ordered adjudged and decreed that the judgment of the trial court in favor of defendants Huey Husser, Elaine M. Husser and The Fidelity and Casualty Company of New York dismissing and rejecting the demands of plaintiffs Karl L. Bickham and Lois Marie Bickham, be and the same is hereby annulled, reversed and set aside.
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff Karl L. Bickham in the sum of $416.82 and in favor of plaintiff Lois Marie Bickham in the sum of $5,000.00 against defendants Huey Husser, Elaine M. Husser, The Fidelity and Casualty Company of New York, Bogalusa Coca Cola Bottling Company, Inc. and Robert E. Carter, jointly and in solido. All costs of these proceedings to be paid jointly by the named defendants.
Amended and rendered.